# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

№ 24-CV-7010 (RER) (JRC)

_____

YURY GOKHBERG AND MARAT GOKHBERG

VERSUS

200 CORBIN OWNERS CORP., ET AL

_____

**MEMORANDUM & ORDER**

_____

**RAMÓN E. REYES, JR., District Judge:**

*Pro se* plaintiffs Yury and Marat Gokhberg ("Yury" and "Marat," respectively, and "Plaintiffs" or "Gokhbergs," collectively) bring this action against 200 Corbin Owners Corp., Arthur Weiner, Alla Berger, Irene Buch, Israel Odesky, and United Management Corp. (collectively, the "Co-op Defendants"); Corbin Realty LLC; the corporation's attorneys, Harvey D. Kampton and Rosenberg & Estis, P.C. (the "Professional Defendants"); Elton Cohn and Sarah Cohn (the "Purchaser Defendants"); Mannion Auctions, LLC (the "Auction Defendant"); and City Marshals Henry Daley and Robert Renzulli (the "Marshal Defendants," and together with the Co-op Defendants, the Professional Defendants, the Purchaser Defendants, and the Auction Defendant, "Defendants"). Plaintiffs assert claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, and the Fair Housing Act ("FHA" or "Fair Housing Act"), 42 U.S.C. §§ 3601–3619, along with ten state-law causes of action.

Six motions to dismiss are before the Court. For the reasons explained below, the motions are granted. Plaintiffs' RICO and FHA claims are dismissed for failure to state a

claim. Plaintiffs' remaining state-law claims are dismissed for lack of subject matter jurisdiction. The Court also dismisses, *sua sponte*, the claims against Corbin Realty LLC and the Auction Defendant.[1] Because the defects are jurisdictional, time-barred, or otherwise incurable, the Court will not grant any further leave to amend.

## BACKGROUND

I.    Factual Background[2]

The Gokhbergs have been shareholders in 200 Corbin Owners Corp. for more than twenty years. In April 1997, Yury first became a 200 Corbin Owners Corp. shareholder by purchasing shares corresponding to apartment 6V, 200 Corbin Place, Brooklyn, New York. (Amended Complaint, ECF No. 10 ("Amended Complaint") ¶ 12).[3] In October 2000, Yury purchased additional shares corresponding to apartments 6M and 6N. (*Id.* ¶ 13). In March 2002, Marat purchased shares corresponding to apartment 3C.

---

[1] Corbin Realty LLC and the Auction Defendant did not file a motion to dismiss. However, the Court addresses the claims against these parties *sua sponte*. District courts have the inherent authority to dismiss meritless claims *sua sponte*. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (per curiam) (affirming the district court's conclusion that it had the power to dismiss a frivolous action *sua sponte*); *Wachtler v. Cty. of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) ("The district court has the power to dismiss a complaint *sua sponte* for failure to state a claim.") (quoting Leonhard v. United States, 633 F.2d 599, 609 n.11 (2d Cir. 1980)). Plaintiffs must be given notice and an opportunity to be heard, but a court can dismiss claims *sua sponte*, particularly where a defendant has neither been served nor appeared. *Alki Partners, L.P. v. Vatas Holding GMBH*, 769 F. Supp. 2d 478, 499 (S.D.N.Y. 2011) (dismissing, *sua sponte*, claims against a non-appearing, non-moving defendant where motions by other defendants put the plaintiff on notice of the ground for dismissal), aff'd sub nom *Alki Partners, L.P. v. Windhorst*, 472 F. App'x 7 (2d Cir. 2012) (summary order).

[2] Unless otherwise noted, all facts are drawn from the Plaintiffs' Amended Complaint (ECF No. 10) and are assumed true for purposes of these motions.

[3] The Amended Complaint contains a version that is redlined over the original complaint. (ECF No. 10 at 36-73). The references herein are to the Amended Complaint appearing at ECF No. 10 pages 1-35, which the Court construes as the operative pleading.

(*Id*. ¶ 11). Subsequently, Marat and Yury purchased additional shares corresponding to another apartment. (*Id*. ¶ 14). In April 2012, apartments 6M and 6N were combined into one apartment, 6MN, and the corresponding shares were issued to Yury. (*Id*. ¶ 15). Eight years later, in December 2020, Marat came to hold the shares to apartment 6MN as security for a purported $800,000 mortgage to Yury, which was subsequently registered and recorded as a UCC-1 lien. (*Id*. ¶ 16).

Beginning in 2017, 200 Corbin Owners Corp. initiated a series of Housing Court proceedings against Yury for unpaid maintenance under the proprietary lease. (ECF Nos. 37-4, 37-5, 37-6). On March 16, 2022, that court entered a judgment of possession and eviction against Yury. *200 Corbin Owners Corp. v. Gokhberg*, Index No. LT-311514-21/KI (N.Y. Civ. Ct. Kings Cnty. Mar. 16, 2022), ECF No. 29-29 (the "Housing Court Judgment"). Plaintiffs allege that, in connection with the foreclosure and eviction, Yury lost personal property valued at more than $200,000, that Marat's asserted lien was disregarded, and that they were subjected to retaliation and other governance abuses at 200 Corbin. (Am. Compl. ¶¶ 82, 194, 198, 209, 221).

In 2023, Plaintiffs filed a plenary action in Supreme Court, Kings County, against the Co-op, its board members, managing agent, counsel, purchasers, and auctioneer, raising claims related to the foreclosure, eviction, and auction of Apartment 6MN. On July 24, 2024, the court dismissed the complaint in its entirety after Plaintiffs failed to submit opposition or appear for argument. *Gokhberg v. 200 Corbin Owners Corp.*, Index No. 525322/2023 (N.Y. Sup. Ct. Kings Cnty. July 24, 2024), ECF No. 29-8 (the "Kings County Dismissal"). Plaintiffs now assert similar claims in this federal action.

3

II.     Procedural Background

Plaintiffs filed their initial complaint on October 4, 2024, and their Amended Complaint on December 4, 2024. (ECF Nos. 1, 10). After the Amended Complaint, each defendant group moved to dismiss. Marshal Defendant Daley filed the first motion on December 18, 2024. (ECF No. 12). The Co-op Defendants followed on February 20, 2025. (ECF Nos. 26–27). Professional Defendant Rosenberg & Estis, P.C. filed its motion the next day, February 21, 2025. (ECF Nos. 28–29). Professional Defendant Harvey D. Kampton filed his motion on March 5, 2025. (ECF Nos. 31–32). The Purchaser Defendants moved on March 13, 2025. (ECF No. 37). Finally, Marshal Defendant Renzulli filed his motion on April 1, 2025. (ECF No. 38).

Although six separate motions are pending, Defendants advance overlapping grounds for dismissal. First, they argue that the Court lacks subject-matter jurisdiction under the *Rooker–Feldman* doctrine because the relief sought would effectively undo the March 16, 2022 Housing Court Judgment and the July 24, 2024 Kings County Dismissal. (ECF Nos. 12, 26–27, 28–29, 38). Second, Defendants contend that the RICO claim fails to plead a cognizable enterprise, predicate acts, a pattern, or Rule 9(b) particulars. (*Id.*) Third, Defendants assert that the FHA section 3617 retaliation claim does not allege protected activity, causation, or timeliness (ECF Nos. 26–27, 28–29). Fourth, Defendants urge the Court to decline supplemental jurisdiction over any remaining state-law claims if the federal claims are dismissed. (*Id.*)

## LEGAL STANDARDS

"[F]ederal courts are courts of limited jurisdiction and may not decide cases over which they lack subject matter jurisdiction." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000). Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal of a claim when the federal court lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(b)(1). In reviewing a motion to dismiss under Rule 12(b)(1), courts must "accept as true all material factual allegations in the complaint," *Shipping Fin. Serv. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998), but refrain from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]," *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003). The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

Rule 12(b)(6) authorizes dismissal where the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive such a motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While all factual allegations contained in the complaint are assumed to be true, this presumption is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

When a plaintiff proceeds *pro se*, the court must liberally construe the complaint "as raising the strongest arguments they suggest". *Lovelace v. Wells Fargo Bank, NA*, 762 F. Supp. 3d 186, 189 (E.D.N.Y. 2025) (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)); *see Sause v. Bauer*, 585 U.S. 957, 960 (2018) (per curiam). As a result, the court may accept as true well pleaded factual allegations in his opposition to a motion to dismiss. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013). This is because the "*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (concluding that regardless of the holdings of *Twombly* and *Iqbal* that the court is obligated to liberally interpret *pro se* complaints).

## **DISCUSSION**

Plaintiffs assert twelve causes of action. The Court first addresses the Eleventh Cause of Action, brought under RICO against all defendants. (Am. Compl. at 32). Second, the Court turns to the Twelfth Cause of Action, brought under the FHA. (*Id.* at 33). Next, the Court considers whether it has subject matter jurisdiction over the Plaintiffs' state-law and common-law causes of action, set out as the First through Tenth Causes of Action, under the *Rooker–Feldman* doctrine. (*Id.* at 10–31). Finally, the Court explains why, even if *Rooker–Feldman* doctrine does not apply, it would decline to exercise supplemental jurisdiction. Because the defects are jurisdictional, time-barred, or otherwise incurable, further leave to amend would be futile and is denied.

6

I.    <u>Plaintiffs' RICO Claim Is Dismissed</u>

RICO makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Section 1962(d) further makes it unlawful for "any person to conspire to violate" Section 1962. *Id.* § 1962(d). As the Second Circuit has explained, if a plaintiff fails to "allege a substantive violation of RICO," a claim alleging a RICO conspiracy under section 1962(d) must fail as well. *Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004). Accordingly, the Court begins with the claim under Section 1962(c).

Courts in this Circuit have recognized that the pleading burden in civil RICO cases is high as "[c]ourts look with particular scrutiny at claims for a civil RICO, given RICO's damaging effects on the reputations of individuals alleged to be engaged in RICO enterprises and conspiracies." *Spiteri v. Russo,* No. 12-CV-2780 (MKB) (RLM), 2013 WL 4806960, at *45 (E.D.N.Y. Sept. 7, 2013). To state a violation of Section 1962(c), a plaintiff must plead four elements: "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity." *DeFalco v. Bernas,* 244 F.3d 286, 306 (2d Cir.2001); *see also S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996).

Under this framework, a "pattern of racketeering activity" is a prerequisite to a Section 1962(c) claim. *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 656 (S.D.N.Y. 1996). The statute defines "racketeering activity" by listing specific criminal acts that may serve as predicate offenses, including "any act or threat involving . . . bribery . .

. which is chargeable under State law and punishable by imprisonment for more than one year," as well as "any act which is indictable under . . . section 201 (relating to bribery), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud) . . . [and] section 1956 (relating to the laundering of monetary instruments)." 18 U.S.C. § 1961(1). "[F]ailure to plead RICO predicate acts, much less a pattern of racketeering activity, is itself fatal to [p]laintiff's RICO claim." *Katzman*, 167 F.R.D. at 656.

Here, Plaintiffs conclusorily allege that Defendants "used interstate wires and mail to transmit false financial statements and fraudulent UCC filings," "transferred misappropriated funds through various entities . . . to conceal the illegal source and use of these funds," and "engaged in bribery of third parties, including but not limited to city marshals." (Am Compl. ¶¶ 251–53). The Court therefore considers, in turn, mail and wire fraud, bribery, and money laundering as potential predicate acts.

A. Mail Fraud and Wire Fraud

Plaintiffs fail to plausibly plead the predicate acts of mail fraud and wire fraud.

A RICO claim alleging mail and wire fraud as predicate acts must show "(1) the existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme." *S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996) (citation omitted). "The term 'scheme to defraud' is measured by a non-technical standard reflecting fundamental notions of honesty, fair play and right dealing." *Aiu Ins. Co. v. Olmecs Med. Supply, Inc.*, No. CV-04-2934 (ERK), 2005 WL 3710370, at *10 (E.D.N.Y. Feb. 22, 2005) (citing *United States v. Trapilo,* 130 F.3d 547, 550 (2d

Cir.1997)). It has been described as "a plan to deprive a person 'of something of value by trick, deceit, chicane or overreaching.'" *Id.* (quoting *United States v. Autuori,* 212 F.3d 105, 115 (2d Cir. 2000)). "The use of the mails need not be essential to the fraudulent scheme as long as the mailing is incident to an essential part of the scheme." *Zigman v. Giacobbe,* 944 F. Supp. 147, 153 (E.D.N.Y.1996) (citing *Pereira v. United States,* 347 U.S. 1, 8 (1954)).

Furthermore, "[i]n pleading a violation of the mail and wire fraud statutes, Rule 9(b) of the Federal Rules of Civil Procedure must be satisfied." *In re Sumitomo Copper Litig.*, 995 F. Supp. 451, 455 (S.D.N.Y. 1998) (citing *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1176 (2d Cir.1993)). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Pursuant to this higher pleading standard, a complaint must "specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Colony at Holbrook, Inc. v. Strata G.C.*, Inc., 928 F. Supp. 1224, 1230 (E.D.N.Y. 1996) (quoting *McLaughlin v. Anderson,* 962 F.2d 187, 191 (2d Cir. 1992)). "[T]he 'overwhelming trend' amongst the lower courts is to apply Rule 9(b) strictly in order to effect dismissal of civil RICO suits." *In re Sumitomo Copper Litig.*, 995 F. Supp. at 455 (citations omitted).

Here, Plaintiffs' allegations fall short of these requirements. In the Amended Complaint, Plaintiffs only assert that Defendants "used interstate wires and mail to transmit false financial statements [and] fraudulent UCC filings." (Am. Compl. ¶ 251).

Plaintiffs do not identify any specific misrepresentation, explain why it was false, or otherwise set forth a scheme designed to deprive them of property by trick or deceit. Although Plaintiffs invoke the mails and wires, they do not allege the circumstances of any mailing or transmission—when it occurred, by whom, to whom, or how it furthered a fraudulent plan. The same is true for the allegations in the Gokhbergs' opposition. (Plaintiffs' Combined Opposition, ECF No. 40 ("Pls.' Opp.") at 7). Plaintiffs contend that the "200 Corbin Insider Group"—comprising the cooperative, its board members, the managing agent, outside counsel, and the city marshals—operated with a common purpose of seizing Apartment 6MN, with each actor playing a discrete role (board members voting policy, the agent mailing arrears notices, counsel drafting filings, and marshals enforcing them). (*Id.*) These generalized and conclusory allegations are wholly insufficient under Rule 9(b) and do not plausibly plead mail or wire fraud as predicate acts. *See Mills*, 12 F.3d at 1176 (finding that allegations on mail and wire fraud, when pled as RICO predicate acts, must satisfy Rule 9(b)).

B. <u>Money Laundering</u>

Plaintiffs' allegations of money laundering likewise fail to state a predicate act.

To state a claim for money laundering under RICO, a plaintiff must plead: "(1) that the defendant conducted a financial transaction; (2) that the transaction in fact involved the proceeds of specified unlawful activity as defined in [18 U.S.C.] § 1956(c)(7); (3) that the defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and (4) that the defendant knew that the financial transaction was designed in whole or in part to conceal or disguise the source,

10

ownership, control, etc., of those proceeds." *Dale v. Banque SCS Alliance S.A.*, No. 02 Civ. 3592 (RCC) (KNF), 2005 WL 2347853, at *5 n.2 (S.D.N.Y. Sept. 22, 2005) (citing *United States v. Maher*, 108 F.3d 1513, 1527–28 (2d Cir. 1997)); *see also In re 650 Fifth Ave. & Related Properties*, 777 F. Supp. 2d 529, 558–59 (S.D.N.Y. 2011).

Here, Plaintiffs allege that Defendants "transferred misappropriated funds through various entities, including Corbin Realty LLC, to conceal the illegal source and use of these funds for personal benefit." (Am. Compl. ¶ 253). This allegation does not identify a particular financial transaction, let alone facts showing that the transaction involved "proceeds of specified unlawful activity" under Section 1956(c)(7). Nor does it allege that any Defendant knew the property involved represented such proceeds, or that the transaction was designed to conceal the source or ownership of those proceeds. Instead, the complaint offers only conclusory references to laundering money without factual detail as to what occurred, when, by whom, or with what knowledge.

## C. Bribery

The Court considers Plaintiffs' bribery allegations under both federal law and state law. *See* 18 U.S.C. § 1961(1).

Federal law defines bribery as "giving or attempting to give something of value to a public official to influence an official act, commit fraud, or to omit any act in violation of his lawful duty, or for a public official to demand something of value to do the same." 18 U.S.C. § 201. "Pursuant to 18 U.S.C. § 201 (bribery of a public official), the person receiving the alleged bribe must be a federal official." *Laverpool v. New York City Transit Auth.*, 760 F. Supp. 1046, 1058 (E.D.N.Y. 1991). Thus, as a threshold matter, a bribery

11

predicate requires a suitable federal public official. Here, Plaintiffs allege that Defendants "engaged in bribery of third parties, including but not limited to city marshals." (Am. Compl. ¶ 253). But New York City marshals are not "federal official[s]" within the meaning of § 201(a)(1). See *United States v. Aloi*, 449 F. Supp. 698, 709 n.14 (E.D.N.Y. 1977) (interpreting Second Circuit precedent to hold that a city official was not a federal public official under § 201); *see also United States v. Hoskins*, 520 F. Supp. 410, 414 (N.D. Ill. 1981) (explaining that persons acting on behalf of a state or municipal government are not "acting for or on behalf of the United States" within § 201).

Nor have Plaintiffs pleaded facts that would plausibly state a violation of New York's bribery statutes, which may serve as RICO predicates if "chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1). Bribery is defined under New York Penal Law Sections 180.00–180.55 (bribery not involving public servants) and 200.00–200.50 (bribery involving public officials). Here, only Sections 200.00–200.50 are relevant. According to Section 200.00 of the New York Penal Law, "a person is guilty of bribery in the third degree when he confers, or offers or agrees to confer, any benefit upon a public servant upon an agreement or understanding that such public servant's vote, opinion, judgment, action, decision or exercise of discretion as a public servant will thereby be influenced." N.Y. Penal Law § 200.00.

Plaintiffs, however, do not identify which provision of New York law Defendants allegedly violated, nor do they allege any facts regarding "an agreement or understanding" with a marshal, the "value of the benefit" conferred, or the "official act" to be influenced. The bare assertion of "bribery" is therefore conclusory and does not

12

plausibly allege a felony chargeable under New York law. Absent factual allegations satisfying the elements of either federal or state bribery, Plaintiffs have not pleaded a predicate act for bribery under RICO.

With no adequately pleaded predicate acts, Plaintiffs fail to properly plead a "pattern of racketeering activity,"[4] so their Section 1962(c) claim fails; the Section 1962(d) conspiracy claim fails for the same reason. *Capital Asset Mgmt., Inc.*, 385 F.3d at 182.

## II.    Plaintiffs' FHA Claim Is Inadequately Pleaded and Untimely

Plaintiffs' FHA retaliation theory rests on four allegations: (1) that Yury "was deprived of his use of Apt. 6MN … as a result of retaliation for raising accounting and legal concerns" (Am. Compl. ¶ 102); (2) that Yury "was deprived of his ability to rent or sell" due to withheld permission, failure to process a buyer's application, and alleged discrimination against buyers with children and persons with disabilities (*id.* ¶ 102); (3) that "defendants have retaliated … over objections and requests for information" (*id.* ¶ 127); and (4) that certain defendants "retaliated … by engaging in discriminatory

---

[4] The Court further notes that even if Plaintiffs could adequately allege two predicate acts—which they have not—the continuity element of a RICO "pattern" can never be satisfied on the facts alleged. A RICO pattern may be established only through open-ended or closed-ended continuity. *Reich v. Lopez*, 858 F.3d 55, 60 (2d Cir. 2017). Plaintiffs cannot show open-ended continuity because the alleged scheme was inherently terminable: it was directed solely at recovering possession of a single apartment and ended with the Housing Court's judgment of possession and eviction on March 16, 2022. *See Cofacrédit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999); *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008). Nor can Plaintiffs show closed-ended continuity. Plaintiffs contend that the misconduct dates to 2015 when the co-op mailed them "fraudulent arrears notices." (Pls. Opp. at 7–8) The Court is not convinced, as disputed arrears in 2015 is at most a billing dispute rather than a statutory predicate act. The earliest arguable predicate act was the foreclosure in September 2020 and the latest was the March 2022 eviction, a period of approximately eighteen months. The Second Circuit has "never held a period of less than two years to constitute a 'substantial period of time'" sufficient for closed-ended continuity. *Cofacrédit, S.A.*, 187 F.3d at 242.

practices, obstructing [Plaintiffs'] ability to rent or sell … and taking adverse actions … for raising concerns about illegal activities and mismanagement" (*id.* ¶ 260). Defendants argue these allegations fail to state a claim and are time-barred (ECF No. 26-3 at 13–19; ECF No. 44 at 7–8); the Court agrees.

The FHA forbids discrimination in housing because of race, color, religion, sex, familial status, national origin and disability. *See* 42 U.S.C. §§ 3604–3606. Section 3617 prohibits retaliation for exercising rights under the FHA. *See* 42 U.S.C. § 3617; *Favourite v. 55 Halley St., Inc.*, 381 F. Supp. 3d 266, 278 (S.D.N.Y. 2019). To state a retaliation claim under the FHA, a plaintiff must allege: (1) that he engaged in protected activity by opposing conduct prohibited under the FHA; (2) that the defendant(s) was aware of the protected activity; (3) that the defendant(s) subsequently took adverse action against the plaintiff; and (4) that there is a causal connection between the protected activity and the adverse action, *i.e.*, that a retaliatory motive played a part in the adverse action.'" *Favourite*, 381 F. Supp. 3d at 278 (*quoting Lynn v. Vill. of Pomona*, 373 F. Supp. 2d 418, 432 (S.D.N.Y. 2005)). The term "protected activity" refers to "action taken to protest or oppose statutorily prohibited discrimination." *Miller v. Bd. of Managers of Whispering Pines at Colonial Woods Condo. II*, 457 F. Supp. 2d 126, 131 (E.D.N.Y. 2006) (cleaned up).

Here, Plaintiffs fail to allege that they engaged in any protected activity—action taken to protest or oppose statutorily prohibited discrimination. Plaintiffs assert retaliation "for raising accounting and legal concerns involving defendants", or "*over objections and requests for information*", and for "raising concerns about illegal activities and

14

mismanagement" shareholder disputes—not for opposing or reporting housing discrimination prohibited by the FHA. (Am. Compl. ¶¶ 98, 102, 127, 260). In their opposition, Plaintiffs further point to a rejected application by a prospective purchaser, Dmitry Basov, and contend that Yury insisted on fair treatment. (Pls.' Opp. at 10). Plaintiffs make only general references to alleged discrimination against prospective buyers "based on the number of children" or against "persons with disabilities," and these assertions are not tied to any protected activity by Plaintiffs themselves. (Am. Compl. ¶ 102). Plaintiffs have simply failed to plead that they engaged in any protected activity.

The claim is also untimely. FHA claims are subject to a two-year statute of limitations. *See* 42 U.S.C. § 3613(a)(1)(A) (providing in relevant part that a civil action may be commenced "not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice"). For example, in *Pantoja v. Scott*, the court held that the statute of limitations began to run when the defendant refused to provide secondary financing, which "occurred or terminated" on the date of the closing, even though eviction and rescission proceedings followed. No. 96 Civ. 8593 (AJP), 2001 WL 1313358, at *9 (S.D.N.Y. Oct. 26, 2001). The court further explained that the continuing violation doctrine did not apply because the alleged discriminatory act concluded at the closing, and later events were merely consequences rather than new violations. *Id.* at 10–11. Likewise here, any possible FHA violation ended no later than the September 1, 2021 foreclosure sale, when Plaintiffs' housing interest in Apartment 6MN was extinguished, even if they continued to feel its effects afterward. (Am. Compl. ¶¶ 76–83). Plaintiffs

commenced this action on October 4, 2024—more than two years later. (ECF No. 1). Accordingly, the FHA retaliation claim is time-barred.

For these reasons, Plaintiffs' FHA retaliation claim is dismissed.

III.     Plaintiffs' State-Law Claims Are Dismissed under *Rooker–Feldman* Doctrine

"The *Rooker–Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" *Lance v. Dennis,* 546 U.S. 459, 460 (2006) (*per curiam*) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005)); *see also Hoblock v. Albany County Bd. of Elecs.,* 422 F.3d 77, 85 (2d Cir.2005) (same). The *Rooker–Feldman* doctrine applies where the federal-court plaintiff: (1) lost in state court, (2) complains of injuries caused by the state-court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state-court judgment was rendered. *Hoblock,* 422 F.3d at 85; *see also Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014).

The Court observes that Plaintiffs' federal complaint is, in substance, an attack on two separate state-court judgments: first, the March 16, 2022 judgment of eviction entered by the New York City Housing Court (the "Housing Court Judgment"); and second, the July 24, 2024 dismissal of their action in the New York Supreme Court, Kings County (the "Kings County Dismissal").

Under *Hoblock*, two of the four *Rooker–Feldman* requirements are plainly satisfied. Plaintiffs are "state-court losers" within the meaning of the doctrine, having lost

16

possession of apartment 6MN in Housing Court and suffered dismissal of their subsequent claims in Supreme Court.[5] Likewise, both judgments were rendered well before the commencement of this action in October 2024, satisfying the timing requirement.[6]

In determining the second and third requirements, the Court first considers the Kings County Dismissal, then turns to the Housing Court Judgment.

A.  The Kings County Dismissal

The Court begins with the Kings County Dismissal. That order dismissed, in its entirety, Plaintiffs' claims against 200 Corbin Owners Corp., Arthur Weiner, Alla Berger, Irene Buch, Israel Odesky, United Management Corp., Corbin Realty LLC, Rosenberg & Estis, P.C., Harvey D. Kampton, Elton and Sarah Cohn, and Mannion Auctions, LLC. (ECF No. 29-8). In this action, Plaintiffs assert the very same state-law causes of action against those same defendants, and seek relief that would effectively nullify the Kings County Dismissal.

---

[5] Plaintiffs contend that only Yury "lost" in state court. (Pls' Opp. at 5). The record forecloses that contention: whatever the posture in Housing Court, both Yury and Marat were plaintiffs in the 2023 Kings County action, and that complaint was dismissed in its entirety on July 24, 2024. (ECF No. 29-8).

[6] Plaintiffs argue that the relevant judgment for *Rooker–Feldman* purposes is the February 6, 2025 order denying vacatur. (Pls.' Opp. at 5). That contention is misplaced. The operative judgments are the March 16, 2022 Housing Court judgment and the July 24, 2024 Kings County dismissal, because those judgments created the injuries of which Plaintiffs complain. See *McKithen v. Brown*, 481 F.3d 89, 98 (2d Cir. 2007) ("the applicability of the *Rooker–Feldman* doctrine turns . . . on the causal relationship between the state-court judgment and the injury of which the party complains in federal court"). The 2025 vacatur denial did not itself cause any new injury, but merely left the prior judgments undisturbed.

Federal courts in this Circuit have repeatedly emphasized that the critical inquiry under *Rooker–Feldman* is whether the injury complained of was caused by the state court judgment itself. See *McKithen v. Brown*, 481 F.3d 89, 97–98 (2d Cir. 2007). That principle applies with equal force to default judgments and dismissals. See *Shieh v. Chase Bank USA, N.A.*, No. 11–CV–5505 (CBA)(SMG), 2012 WL 2678932, at *5 (E.D.N.Y. July 6, 2012) (holding that "[*Rooker–Feldman*] applies to default judgments just as it does to other types of judgments," and that challenges must be brought through state vacatur procedures); *Granger v. Harris*, No. CV–05–3607 (SJF)(ARL), 2007 WL 1213416, at *5 (E.D.N.Y. Apr. 24, 2007) (finding that claims of wrongful service and a resulting lien "in essence, seek to overturn the default judgment entered against Granger in the state court action").

Here, by reasserting essentially the same claims against the same defendants, Plaintiffs are, in substance, inviting this Court to undo the injury inflicted by the Kings County Dismissal. The causal link is direct: absent the Kings County Dismissal, Plaintiffs would still have a vehicle for the relief they now seek. Thus, Plaintiffs' federal complaint falls squarely within the second and third prongs of the doctrine, because it both complains of injuries caused by the state-court judgment and invites this Court to review and reject that judgment.

Accordingly, the state-law claims against the Co-op Defendants, the Professional Defendants, the Purchaser Defendants, Corbin Realty LLC, and the Auction Defendant are dismissed for lack of subject matter jurisdiction.

B. <u>The Housing Court Judgment</u>

The only defendants not encompassed by the Kings County Dismissal are the Marshal Defendants, and the claims against them necessarily rise or fall with the Housing Court Judgment. The Amended Complaint alleges that the Marshal Defendants "facilitated the unlawful seizure and fraudulent transfer of Apartment 6MN" by executing the eviction order. (Am. Compl. ¶ 256). But, as the Marshal Defendants themselves argue, their role was limited to carrying out the Housing Court Judgment. (ECF No. 12-6 at 6).

In *Bush v. Danziger*, the court held that the plaintiff's alleged injuries—including the lockout by a marshal, the removal of belongings by movers, and the actions of NYCHA employees—were all "produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." No. 06 Civ. 5529 (PKC), 2006 WL 3019572, at *4 (S.D.N.Y. Oct. 23, 2006). The Housing Court judgment in favor of NYCHA was the direct legal cause of the eviction, and each downstream injury flowed from enforcement of that judgment. The court explained that the source of injury was the Housing Court judgment itself, because without that order none of the alleged injuries would have occurred.

Here, the same reasoning applies. Plaintiffs' allegations against the Marshal Defendants are not independent of the Housing Court Judgment but are inseparable from it, because their alleged misconduct consisted entirely of executing the eviction order. Without the Housing Court Judgment, the Marshal Defendants would have had no authority to act and no injury would have followed. The injuries Plaintiffs ascribe to the Marshal Defendants were "produced by a state-court judgment," *Hoblock*, 422 F.3d at 88.

19

Thus, Plaintiffs' claims against the Marshal Defendants also satisfy the second and third prongs of *Rooker–Feldman*.[7]

Because the alleged injuries all flow directly from these judgments, the Court lacks subject matter jurisdiction over Plaintiffs' First through Tenth Causes of Action under the *Rooker–Feldman* doctrine.[8]

IV.    Supplemental Jurisdiction Over State-Law Claims Is Declined

Even if *Rooker–Feldman* did not deprive the Court of subject-matter jurisdiction, dismissal of Plaintiffs' state law claims would be appropriate. *See* 28 U.S.C. § 1367(a). "[W]here all the federal claims have been dismissed at a relatively early stage, the district court should decline to exercise supplemental jurisdiction over pendent state-law claims." *Astra Media Grp., LLC v. Clear Channel Taxi Media, LLC,* 414 F. App'x 334, 337 (2d Cir. 2011); *see also Marcus v. AT & T Corp.,* 138 F.3d 46, 57 (2d Cir.1998). Dismissal is favored because it allows "state courts . . . if so called upon, [to] decide for themselves whatever questions of state law this case may present." *Giordano v. City of N.Y.,* 274 F.3d 740, 754 (2d Cir. 2001) (citation omitted). After considering these factors, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims.

---

[7] The Court also notes that a substantial portion of Plaintiffs' state-law counts—though styled against non-marshal defendants—seek relief that would effectively undo the Housing Court Judgment, including challenges to the auction and share reissuance, the eviction and seizure of property, and subsequent transfers of Apartment 6MN. The remedies requested, such as quiet title, restoration of possession, reinstatement of liens, invalidation of share/title reissuance, and disgorgement of sale proceeds, would require review and reject the eviction's operative effect and thus amount to a de facto appeal.

[8] The Marshal Defendants also invoke quasi-judicial immunity. Because the Court dismisses Plaintiffs' state-law claims under the *Rooker–Feldman* doctrine and their federal claims on other grounds, the Court need not reach this argument.

V.      Leave to Amend Will Not Be Granted

Courts in this Circuit often consider whether *pro se* litigants should be afforded leave to amend upon the dismissal of their claim. *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795–96 (2d Cir. 1999); *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991). However, "[l]eave to amend . . . may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (citation omitted).

Here, the Gokhbergs have already amended once, and the defects identified here—jurisdictional bars under *Rooker–Feldman*, untimeliness under the FHA, and substantive pleading deficiencies in the RICO claim[9]—are not ones that could be cured by better pleading. *Tocker v. Philip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006) (holding that "a motion for leave to amend a complaint may be denied when amendment would be futile." (citing *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003))); *Wlosinski v. Smith*, No. 17-CV-6865-FPG, 2018 WL 1827671, at *4 (W.D.N.Y. Apr. 17, 2018) (declining to grant leave to amend because the court did not have subject matter jurisdiction pursuant to the FTCA). Under these circumstances, leave to amend is denied.

---

[9] The RICO claim fails not merely for lack of factual detail but because the continuity element of a "pattern of racketeering activity" cannot be satisfied on the facts alleged and cannot be cured even if Plaintiffs were to plead additional details. *See supra* note 4.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motions to dismiss (ECF Nos. 12, 26–27, 28–29, 31–32, 37, 38) are granted. The Clerk of Court is respectfully directed to enter judgment and close the case.


SO ORDERED.

Hon. Ramón E. Reyes, Jr.

Digitally signed by Hon. Ramón E. Reyes, Jr.
Date: 2025.09.30 10:27:42 -04'00'

_____
RAMÓN E. REYES, JR.
United States District Judge

Dated: September 30, 2025
          Brooklyn, New York